Clarence G. Sanford, appellant, v. May Sanford Luce, appellee.

No. 48377.

(Reported in 60 N.W.2d 885)

. November 17, 1953.

Brown & Nordenson, of Sioux City, for appellant.

Hanna & O'Brien, of Sioux City, for appellee.

Smith, J.—The petition (filed June 24, 1952) alleged an oral agreement under which defendant would reimburse plaintiff upon completion of certain construction work upon her apartment building. He testified that she agreed to pay him "when she got the apartments on a paying basis * * * when she was financially able and the apartments was paying off."

At another point he testified that before he undertook the work but after he had advanced her some money he asked her: "You already owe me a little back money * * *. You're not going to be able to pay for this. Just how are you going to take care of this?" To which he says she answered: " 'With the income off of this' " (meaning from the apartment); also that she said she was going to remodel some of the apartments and would be able to " 'reimburse you on it and pay you for it.' "

Plaintiff and defendant were at that time husband and wife but living apart under a decree of separate maintenance (entered October 12, 1946) that had awarded her the apartment building in question (at 1620 South Rustin Street), plaintiff retaining another one—the Floyd Apartments at 1630 South Rustin Street. He says each was collecting the rental and paying the bills "for their own respective properties."

The division of property under the separate maintenance decree was based on a stipulation (made a part of the decree) which provided that Mrs. Sanford (now defendant-Luce) "should receive no alimony, either temporary or permanent, in this action or in any subsequent action brought by her arising out of the marriage" and "no support money except the property settlement herein provided." The later divorce decree provided for no support money or alimony.

When plaintiff rested in the present action defendant moved for a directed verdict urging various grounds. The court overruled it, adding: "But I have a serious problem * * * when it comes to instructing * * * as to whether the right to sue has accrued."

Thereupon defendant's attorney amended the motion so as to present the contention that there was no proof the right to sue had accrued as there was no showing defendant's apartment house was on a paying basis. The court sustained the motion on that ground and later overruled plaintiff's motion to set the verdict aside. Plaintiff appeals.

I. The trial court's ruling is based on a supposed fatal variance between plaintiff's pleading and proof as to the time the cause of action accrued. Plaintiff pleaded an oral agreement stating what he was to do and what defendant was to pay and that the construction was completed in September 1947. These

allegations were sufficient to fix the time of completion of the work as the time for payment. That followed in absence of any different time being fixed in the agreement. See Restatement of Law, Contracts, Vol. I, section 270, comment a, page 393.

But plaintiff went further and added that it was agreed "defendant would reimburse plaintiff in full for monies advanced, materials furnished and for construction of said apartment upon completion thereof." This was probably surplusage. But in any event, under the pleading, plaintiff's cause of action accrued "upon completion" of plaintiff's performance of his part of the agreement.

The word "upon" is elastic in meaning. It may mean "as soon as", "at the time of", "in case of", or even "after", depending on the context. Rolfs v. Mullins, 180 Iowa 472, 475, 163 N.W. 232. Its use has been said to make mutual covenants dependent. Courtright v. Deeds, 37 Iowa 503, 508. See 67 C. J. S., On; Upon, Denoting Time, page 495.

We think its use in plaintiff's petition was to indicate the dependency of *payment* by defendant upon prior performance by plaintiff. In that sense it was a somewhat elastic allegation of due date of performance to be liberally construed according to context.

II. Plaintiff testified in various ways as to what defendant promised regarding payment: "When she got the apartments on a paying basis", "when she was financially able", "with the income off" the apartments. He says, when he asked her when she was going to be able to pay, "she informed me that her financial fix was not so that she could at the present time, at the times that I would ask her."

These various statements were practically equivalent to an agreement to pay when she was able.

Defendant cites the annotation in 94 A. L. R. 721 (also 12 Am. Jur., Contracts, section 303) which states that "in a majority of the states in which the question has arisen, and in Canada, it is held that a promise to pay when the promisor 'is able' is not an absolute but a conditional promise to pay; and that therefore the promisee, in order that he may recover on such a promise, must allege and prove ability of the promisor to pay the debt."

A· numerical count of the cases cited by the annotator sustains his statement. But a count of the jurisdictions represented shows a quite even division. We shall continue to use the terms "majority" and "minority" however, as a convenience.

The case reported in connection with the annotation, Mock v. Trustees of First Baptist Church, 252 Ky. 243, 248, 67 S.W.2d 9, 11, 94 A. L. R. 716, 720, holds with the "minority view" and is comparatively late (1934). The opinion says: "The authorities are to the effect that a promise to pay when the promisor is financially able to do so is to be construed to mean that payment is to be made within a reasonable time. * * * So, too, in the absence of circumstances showing it to be perpetual, a forbearance to sue for an indefinite time is regarded as calling for a reasonable period. Williston on Contracts, sec. 38."

This case clearly places Kentucky among the states holding to the "minority view" though the annotator lists it with the "majority." It is of course the latest pronouncement cited in the annotation.

The cleavage between the two views is caused by conflicting opinions as to the importance to be attached to an agreed due date based on the happening of an uncertain contingency, i.e., one not certain to occur. Those holding the "majority view" treat it as a valid condition precedent to accrual of the cause of action. The "minority view" holds that "ability to pay" or any equivalent provision is "too uncertain and indefinite to constitute a condition." See First Cong. Soc. v. Miller, 15 N.H. 520, as cited in the annotation, supra, 94 A. L. R. at page 725.

The logic of the first would lead to the inevitable conclusion that if the event never happens the cause of action never accrues. By requiring the promisee to prove the happening of a contingency within the peculiar knowledge, if not even within the control, of the promisor, it creates uncertainty as to whether there really has been a binding promise to pay.

It was said by Justice Swayne in a case where the condition precedent was "as soon as the crop could be sold, or the money could be raised from any other source": "The stipulations secured to the defendants a reasonable amount of time within which to procure in one mode or the other the means necessary to meet

the liability. Upon the occurrence of either of the events named or the lapse of such time, the debt became due. It could not have been the intention * * * that if the crop were destroyed, or from any other cause could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid. Such a result would be a mockery of justice." Nunez v. Dautel, 19 Wall. (U.S.) 560, 562, 563, 22 L. Ed. 161, 162.

The "minority" rule would not endanger the integrity of the entire contract but would construe the condition as "merely an arrangement that the maker [promisor] is not to pay immediately, and may delay payment until a reasonable time has elapsed." Dille v. Longwell, 188 Iowa 606, 611, 176 N.W. 619, 620. See also Button v. Higgins, 5 Colo. App. 167, 38 P. 390, 391.

The Dille case is more nearly in point here than any other Iowa case cited to or discovered by us. Plaintiff also cites Ryan v. Litchfield, 162 Iowa 609, 613, 144 N.W. 313, 314. In that case the promisor agreed to pay " 'as nearly as possible to meet her [payee's] requirements' " adding " 'but I do not bind myself to any specified time that the same shall be paid.' " We held the word "requirements" was equivalent to "demands" and that the qualifying words meant the promisor was to have a reasonable time after demand was made. It does not aid us much here.

In the Dille case the opinion further says (same page) : "If payment * * * is to be made upon the happening of a future event, that is merely an agreement that it will be convenient to make payment when that event occurs, and not an agreement that no payment need be made within a reasonable time, even if such event fails to happen. De Wolfe v. French, 51 Me. 420; Crooker v. Holmes, 65 Me. 195, at 197. To like effect is Lewis v. Tipton, 10 Ohio St. 88, and Nunez v. Dautel, 86 U. S. 560."

We think the "minority" rule is the sound one where, as here, the circumstances show the debt to be an absolute one. The parties were dealing at arm's length. The marital relation formerly existing between them had been destroyed so far as concerned any moral obligation on plaintiff to assist defendant financially. The testimony clearly shows he expected to be paid— that no gratuity was intended.

We think the legal import of the agreement testified to by plaintiff under the circumstances shown was to secure to de-

fendant a reasonable time to get her apartment on a paying basis, but not to show that payment was wholly dependent on the happening of that contingency. 12 Am. Jur., Contracts, section 301; Nunez v. Dautel, supra, 19 Wall. (U.S.) 560, 22 L. Ed. 161.

III. We have then the simple question whether there was, as defendant claims, a fatal variance between an *allegation* of a promise to pay upon completion of certain work, and *proof* payment was to be made within a reasonable time after such completion.

We have recently pointed out that "in a general way, courts are not inclined to look with favor upon" such a contention and have said "a variance between pleading and proof is immaterial unless the complaining party establishes that he was thereby misled to his prejudice in maintaining his cause of action or defense." Cross v. Hermanson Bros., 235 Iowa 739, 743, 16 N.W. 2d 616, 618. Rule 106, Rules of Civil Procedure, expressly so holds.

No such prejudice is shown here nor can any be inferred from the record. Whether payment was to be made when the work was completed or within a reasonable time thereafter in which to meet the contingency could not have been material to defendant in preparing her defense. Nearly five years had elapsed when the action was commenced. A few months longer delay and her plea of the statute of limitations would have been understandable. In fact her plea of the statute raised the only issue making material the time of accrual of the right of action. "Time, place * * * etc., when not essential to the right of [action] * * * need not be proven as alleged. 1 Greenleaf Ev. section 61." Hurlbut, Ward & Co. v. Bagley & Co., 99 Iowa 127, 129, 68 N.W. 585, 586; 71 C. J. S., Pleading, section 543, note 52.

Furthermore, plaintiff's testimony as to the agreed time for payment was received without objection. It has been said such failure to object is the best possible evidence that the party was not misled to his prejudice—a tacit admission that he was not so misled. Naccarato v. Village of Priest River, 68 Idaho 368, 195 P.2d 370, 373, citing authorities. See 71 C. J. S., Pleading, section 535, note 99, page 1105. We conclude there was no fatal variance shown here.

IV. Defendant's motion to direct and one division of her brief treat the contention urged as one involving failure of proof. There is a distinction between failure of proof and variance. 71 C. J. S., Pleading, section 531, page 1101. We think, however, the claim here is one of mere variance. It urges a lack of proof in only one particular, not in the entire scope of the action. The claimed variance comes squarely within rule 106, R. C. P., and was immaterial and without prejudice.

We have examined the authorities cited by defendant but find nothing to sustain the ruling of the trial court nor anything contrary to the conclusions herein announced. It follows the decision of the trial court must be reversed and it is so ordered.— Reversed.

All JUSTICES concur.